UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SERRA SOCASH, as next friend of P.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-24-977-R |
| ) | |
| ) | |
| INDEPENDENT SCHOOL DISTRICT ) | |
| No. 1 of LOGAN COUNTY OKLAHOMA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant Independent School District No. 1 of Logan County Oklahoma's Motion to Dismiss [Doc. No. 6]. Plaintiff Serra Socash, as next friend of minor, P.S., responded [Doc. No. 8] and the matter is now at issue. For the following reasons, Defendant's Motion is GRANTED.

## Background

Plaintiff alleges the following: On September 1st, 2023, P.S.—a sixth grader at Guthrie Upper Elementary School—asked her teacher, Mr. Jeff McKinley, to use the restroom [Doc. No. 1-12 ¶ 21]. Mr. McKinley said no, and P.S. subsequently menstruated through her pants. Doc. No. 1-12 ¶ 22. She took to social media and posted a photo of Mr. McKinley referencing the incident. *Id*. ¶ 23.

On September 7th, P.S. and other students informed their substitute teacher, Ms. Jesse Parmer, that Mr. McKinley had seen her social media post and was retaliating against her and others that had commented on the social media post. *Id*. ¶¶ 24, 27. Specifically,

1

P.S. told Ms. Parmer that Mr. McKinley rescinded their recess and restroom privileges. *Id*. ¶¶ 26, 28-29. The students informed Ms. Parmer that they did not want to return to Mr. McKinley's classroom because they viewed him as their school bully. *Id*. ¶ 30.

Later that day, Ms. Parmer emailed the students' concerns to Principal Ball. *Id*. ¶ 31. Principal Ball quickly responded, stating that he would "take care of it." *Id*. ¶ 42.

On September 27th, P.S. complained to Principal Ball that Mr. McKinley had yelled at her, referred to both her and her mother as liars, and generally had been bullying her. *Id*. ¶ 32. In response, Principal Ball directed Mr. McKinley to apologize to P.S., which he did. *Id*. ¶¶ 33-34.

October 11 was P.S.'s last day at Guthrie Upper Elementary School. *Id*. ¶ 36. That day, she took multiple audio recordings of Mr. McKinley threatening and bullying her in class in front of her peers. *Id*. Mr. McKinley's repeated misconduct and the District's subsequent response caused P.S. to miss class for fear of continued bullying. *Id*. ¶ 37.

Approximately one week later, P.S.'s mother and grandparents met with Principal Ball, shared the audio recordings, and discussed the bullying and emotional abuse that Mr. McKinley was inflicting upon P.S. *Id*. ¶ 38. The next day, Principal Ball informed P.S.'s mother that Mr. McKinley's behavior was under investigation, but also that P.S. had violated District policy when she recorded the incidents of bullying. *Id*. ¶ 39. Additionally, Principal Ball told her that he had already moved P.S. to a different classroom, that he had provided her with her schoolwork through October 18, and that no further absences would be excused. *Id*. ¶ 40.

On October 26, a local news station aired one of P.S.'s audio recordings. *Id*. ¶ 41. In the recording, Mr. McKinley can be heard telling P.S.:

> "You are an evil, conniving little girl…now you can go home and cry to your mama I don't care. You can smile and laugh and think it's all funny because yeah you are getting me worked up, so you are winning a little bit, that's okay, but in the long run, I'm gonna be alright and you're not."

*Id*. ¶ 40. In the segment, P.S.'s mother stated that Principal Ball's response to the complaints was inadequate and that she was pulling P.S. from the school. *Id*. ¶ 43. When discussing Principal Ball's response to her report of student complaints, Ms. Parmer observed that "obviously nothing happened." *Id*. ¶ 42. She was fired the next day. *Id*. ¶ 44.

Due to this allegedly inadequate response, Plaintiff filed suit in state court, asserting state law tort claims. Doc. No. 8 at p. 1. Following dismissal of most of these claims by the state court, Plaintiff filed her Amended Petition, which included federal law claims, and Defendant subsequently removed the action to this Court. In her Amended Petition, Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment Due Process and Equal Protection rights, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Doc. No. 1-12. Plaintiff also asserts state law claims for negligence, negligence per se, and violations of her rights under the Oklahoma Constitution. *Id*.

Defendant now seeks dismissal of Plaintiff's federal law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), Doc. No. 8 at p. 2, and requests that the Court decline jurisdiction over Plaintiff's state law claims if the present motion succeeds. *Id*. at 12. Alternatively, Defendant also seeks dismissal of Plaintiff's state law claims. *Id*.

**Legal Standard**

In considering a defendant's motion to dismiss brought under Rule 12(b)(6), the Court must determine whether the plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face," and whether the factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted). The Court "must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cty. Bd. of Cty. Commissioners*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Discussion**

I.    **Federal Law Claims**

A. **42 U.S.C. § 1983—Fourteenth Amendment Equal Protection Clause[1]**

"[S]exual harassment by a state actor can constitute a violation of the equal protection clause." *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1249 (10th Cir.

---

[1] The Amended Complaint does not separate the substantive due process claim from the Equal Protection claim, while the Response purports to distinguish the two claims. However, the bulk of Plaintiff's municipal liability argument is placed in the substantive due process portion of her Response. Because both claims require a showing of municipal liability and both arguments appear to intermingle, the Court interprets Plaintiff's municipal liability arguments to be applicable to both her substantive due process and her Equal Protection claims.

1999). "A school district's liability for sexual harassment under the Equal Protection clause is analyzed under a municipal liability framework." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008) (internal citations omitted). "A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted). Instead, "to establish…liability for sexual harassment under the Fourteenth Amendment, a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249 (citations omitted). "In the absence of an official policy, a municipality may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Rost*, 511 F.3d at 1125.

Like in *Rost*, Plaintiff's first alleged policy or custom centers on Defendant's failure to either have adequate policies or to adhere to its existing policies. Doc. No. 8 at pp. 7-9. She alleges an unconstitutional policy or custom of failure to investigate misconduct, discounting the credibility of student allegations, and failing to enact policies that require an adherence to reporting requirements. Doc. No. 12-1 ¶ 56. She specifically contends that "Plaintiff's disclosure of Mr. McKinley's misconduct to Defendant and other students, Defendant's lack of a sufficient investigation, and Defendant's repeated statements that they would investigate the matter, while only pushing back on Plaintiff and forcing her to return to McKinley's class," *id*. ¶ 58, evidences this custom.

When presented with Equal Protection claims premised upon the "custom of failure to receive, investigate, or act on complaints of constitutional violations…a plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff." *Rost*, 511 F.3d at 1125 (citations omitted).

Here, Plaintiff's allegations fall short of these requirements. Although she alleges that Defendant mishandled her complaints, she does not identify any prior incidents of teacher-on-student bullying or harassment, or additional facts that would plausibly allege a widespread or persistent pattern across the District. She also fails to allege that Defendant had notice of prior incidents such that it could be reasonably inferred that it acted with deliberate indifference. *See Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) ("One prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.") (internal citations, quotation marks, and brackets omitted).

Plaintiff also alleges a custom based on Defendant's failure to train its employees to respond to complaints of teacher-on-student abuse. Doc. No. 1-12 ¶ 56(c). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Typically, notice is "established by proving the existence of a pattern of tortious conduct." *Id*. However,

6

deliberate indifference may also "be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id*. at 1307-08 (citation and quotation marks omitted).

Here, Plaintiff acknowledges in her Response that she does not allege a pattern of tortious conduct. Doc. No. 8 at p. 6. Instead, she argues that this case presents one of the "narrow circumstances" in which such a pattern is unnecessary. *Id*. But apart from a few conclusory statements, Plaintiff has not alleged facts supporting a plausible inference that Defendant's employees received constitutionally insufficient training or that a lack of training presents a plainly obvious risk of a constitutional violation. On the contrary, the Amended Petition alleges that Principal Ball ultimately transferred P.S. to a different classroom and launched an investigation into Mr. McKinley's conduct. Because her pleadings lack a factual basis to plausibly allege deliberate indifference through a failure to train, she has failed to state a claim for municipal liability.

Accordingly, because Plaintiff failed to allege that her injury was caused by a policy or custom of the District, she cannot state a claim for municipal liability, and her Equal Protection claim necessarily fails.

### B.  42 U.S.C. § 1983—Fourteenth Amendment Due Process Clause

The municipal liability framework also applies to Plaintiff's substantive due process claim, like her Equal Protection claim, it similarly fails to state a claim for municipal liability for the reasons described above.

Plaintiff's substantive due process claim is seemingly premised on the danger-creation exception to the general rule that "a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Services*, 489 U.S. 189, 197 (1989); *see also Rost*, 511 F.3d at 1125; Doc. No. 1-12 ¶¶ 61-71. Similarly, under the general rule, negligence alone generally does not trigger protection under the Due Process Clause. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986). "To invoke the danger-creation theory, a plaintiff must show a state actor affirmatively acted to create, or increases a plaintiff's vulnerability to, danger from private violence." *T.D. v. Patton*, 868 F.3d 1209, 1222 (10th Cir. 2017) (internal quotations and alterations omitted). "If a plaintiff meets those preconditions, she must next demonstrate: (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specially definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking. *Id*. (citations omitted) (cleaned up).

Here, while the Amended Petition is deficient in multiple respects regarding the danger-creation theory, suffice it to say the misconduct alleged does not "shock the conscience." Defendant, citing *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253 (10th Cir. 1996), contends that because Plaintiff alleges only sexual harassment and verbal abuse, her danger-creation claim cannot survive under "[e]ven the most liberal review."

8

Doc. No. 6 at pp. 5-7. In *Abeyta*, a sixth-grade female student was called a prostitute by her teacher and taunted for over a month. *Abeyta*, 77 F.3d at 1255. The Tenth Circuit held that because the plaintiff alleged sexual harassment instead of sexual assault or molestation, as well as because calling a 12-year-old girl a prostitute did not comprise constitutionally actionable psychological abuse, it did not "shock the conscience." *Id*. at 1255-58. Here, like in *Abeyta*, the alleged bullying and Principal Ball's allegedly inadequate response are not conscience shocking. Therefore, Plaintiff's substantive due process claim fails.

### C. Title IX

Plaintiff next alleges violation of Title IX for sexual harassment resulting is a deprivation of educational opportunities and benefits, as well as a hostile educational environment. Doc. No. 1-12 ¶¶ 74-75.

Under Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance[.]" The Supreme Court has interpreted Title IX as providing a limited private right of action for damages. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 290 (1998). "A plaintiff must allege four factors to state a claim of school district liability under Title IX. She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. #1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999) (citation omitted).

9

Here, Plaintiff failed to plausibly allege that Defendant acted with deliberate indifference. "Deliberate indifference exists where the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Forth v. Laramie Cty. Sch. Dist. No. 1*, 85 F.4th 1044, 1069 (10th Cir. 2023) (internal citations, brackets, and quotation marks omitted). This a "high standard" that "requires more than negligence by school officials." *Ross v. Univ. of Tulsa*, 180 F.Supp.3d 951, 965, 969 (N.D. Okla. 2016) (citation omitted). Moreover, "[c]ourts should not 'second guess decisions' made by school officials or permit students to demand certain remedies." *Id*. at 968-69 (citation and quotation marks omitted). Additionally, "[t]he type of educational setting must be considered in determining the reasonableness of a response." *Id*. (citation omitted).

Plaintiff contends that "Defendant acted with deliberate indifference by failing to properly investigate Plaintiff's allegations and to inform law enforcement or other government officials." Doc. No. 1-12 ¶ 87. She argues that that Defendant's response to complaints of abuse and lax punishment of Mr. McKinley is comparable to that of the school district's response in *Armenta v. Indep. Sch. Dist. No. 5 of Garvin Cty.*, No. CIV-22-659-JD, 2024 WL 3089658 (W.D. Okla. June 21, 2024). In *Armenta*, the school district allowed the starting quarterback of the high school football team to attend his prom, baccalaureate, and graduation despite finding that he had sexually assaulted an intellectually disabled middle school student on school grounds (and had similarly assaulted two other female students). *Armenta*, 2024 WL 3089658, at *1. The victim of the assault, in contrast, was required to attend online classes until the investigation into the alleged assault was completed. *Id*. The court found that the school district's response was

clearly unreasonable because it largely punished the victim, while hardly punishing the perpetrator. *Id.* at *11.

The present facts are distinguishable. While Plaintiff contends that Mr. McKinley received a "slap on the wrist" like the perpetrator in *Armenta*, the pleadings reflect that as allegations intensified, so did Principal Ball's response. Construed in Plaintiff's favor, her allegations show that Ms. Parmer informed Principal Ball that students, including P.S. were being punished for making a social media post using a picture of Mr. McKinley by having their recess and restroom privileges taken away. Because of this, Ms. Parmer reported that the students viewed Mr. McKinley as their bully. Mr. McKinley did nothing. A few weeks later, P.S. told Principal Ball that Mr. McKinley had referred to her and her mother as liars. Principal Ball made Mr. McKinley apologize. Upon learning a couple of weeks later that the apology had not worked, Principal Ball moved P.S. to another classroom and launched an investigation into Mr. McKinley's conduct. Unlike the administration in *Armenta*, Defendant did not consciously turn a blind eye to the misconduct once it was evident that P.S. was the victim of bullying. Taken as a whole, Plaintiff has not adequately alleged that the response was clearly unreasonable.

Accordingly, because Plaintiff failed to plausibly allege that Defendant acted with deliberate indifference to Plaintiff's complaints, Defendant's Motion as to the Title IX claim is GRANTED.

**II.   State Law Claims**

Having disposed of Plaintiff's federal claims, the only issues that remain are matters of state law. "A district court's decision whether to exercise [supplemental] jurisdiction

after dismissing every claim over which it had original jurisdiction is purely discretionary." *Apache Tribe of Okla. v. Brown*, 966 F.Supp.2d 1188, 1197-98 (W.D. Okla. 2013) (quoting *Carlsbad Tech., Inc. v. HIF Bio., Inc.*, 556 (U.S. 635, 639-40 (2009)). The Tenth Circuit instructs that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (citations and quotation marks omitted). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

Here, the Court finds that it is appropriate to decline to exercise its jurisdiction over Plaintiff's state law claims.

## Conclusion

For the reasons stated above, the Court finds that dismissal is proper on all claims brought pursuant to 42 U.S.C. § 1983 and Title IX, and that Plaintiff's remaining state claims should be remanded to state court.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, Doc. No. 6, is GRANTED. IT IS FURTHER ORDERED that the remainder of Plaintiff's action, asserting purely state law claims, is remanded to the District Court of Logan County, Oklahoma, case number CJ-24-43.

IT IS SO ORDERED this 10th day of January, 2025.

                                                                         */s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE